UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIGHTHOUSE LIFE INSURANCE
COMPANY OF NY,

                    Plaintiff,

           - against -

MERYL MOSACK, as Preliminary Executor
of the Estate of Joyce Fabian; and NATASHA
WOLF,

                    Defendants.

**<u>ORDER</u>**

21 Civ. 6052 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff Brighthouse Life Insurance Company ("Brighthouse") brought this

interpleader action against Defendants Meryl Mosack and Natasha Wolf,[1] seeking a

determination as to the proper beneficiary of an annuity issued to Joyce Fabian.  (Cmplt. (Dkt.

No. 1) ¶¶ 7, 18-20)  On December 6, 2021, the parties filed – and on December 7, 2021, this

Court granted – a joint motion for interpleader relief.  (Dkt. Nos. 22-23)  This Court directed

Brighthouse to distribute funds to Meltzer, Lippe, Goldstein & Breitstone, LLP ("Meltzer

Lippe"), as escrow agent, in an amount equal to the annuity's death benefit, directed Meltzer

Lippe to deposit the funds into an escrow account, and dismissed Brighthouse from this action.

(Dec. 7, 2021 Order (Dkt. No. 23))  On December 20, 2021, Meltzer Lippe received the funds

and deposited them into an interest-bearing escrow account.  (Dkt. No. 24)  On January 3, 2022,

Mosack and Wolf filed cross-motions for judgment on the pleadings or, in the alternative, for

---

[1] The Complaint refers to Defendant Wolf as "Natasha Wolf" (see Cmplt. (Dkt. No. 1)), but
Defendant Wolf refers to herself as "Natascha Wolf" in her answer.  (See Wolf Ans. (Dkt. No.
16))

summary judgment.  Each Defendant contends that the annuity's death benefit should be paid to her.  (Dkt. Nos. 25, 32)

For the reasons stated below, Wolf's motion for judgment on the pleadings will be granted, and Mosack's motion for judgment on the pleadings will be denied.

**BACKGROUND**

I.      <u>FACTS</u>[2]

A.      <u>**The Annuity**</u>

On March 17, 2009, Joyce Fabian submitted an application for an individual variable annuity to First MetLife Investors Insurance Company ("MetLife"), which now does business as Brighthouse.  (Cmplt. (Dkt. No. 1) ¶¶ 7-8)  In the application, Fabian named her husband Thomas Wolsey as primary beneficiary, and her step-daughter Natasha Wolf as contingent beneficiary, for purposes of the annuity's death benefit.  (<u>Id.</u> ¶ 8; <u>see also</u> <u>id.</u>, Ex. B ("Annuity Application") (Dkt. No. 1-2) at 1)  On April 9, 2009, MetLife issued the variable annuity number 1102112297 (the "Annuity") to Fabian as the Annuity's owner and annuitant.  (Cmplt. (Dkt. No. 1) ¶ 7; <u>see also</u> <u>id.</u>, Ex. A ("Annuity") (Dkt. No 1-1) at 1)

The Annuity contains the following provision regarding beneficiary designation:

> The Beneficiary designation in effect on the Issue Date will remain in effect, unless changed.  Unless you provide otherwise, the death benefit will be paid in equal shares or all to the Beneficiary(ies) as follows:

---

[2]  The Court's factual statement is derived from the pleadings, which form the basis for the parties' cross-motions for judgment on the pleadings.  <u>See</u> Lively v. WAFRA Inv. Advisory <u>Grp., Inc.</u>, 6 F.4th 293, 302 (2d Cir. 2021) (emphasis omitted) ("[O]n a motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice.").  Here, the pleadings include the Complaint (Dkt. No. 1), Mosack's Answer (Dkt. No. 13), and Wolf's Answer (Dkt. No. 16).

1.    to the primary Beneficiary(ies) who survive you (or if the Owner is not a natural person, the Annuitant's death); or if there are none, then

2.    to the contingent Beneficiary(ies) who survive you (or if the Owner is not a natural person, the Annuitant's death); or if there are none, then

3.    to your estate.

(Annuity (Dkt. No 1-1) at 20)

The Annuity contains the following provision as to changing the beneficiary:

Subject to the rights of any irrevocable Beneficiary, you may change the primary Beneficiary or contingent Beneficiary.  A change may be made by filing a Notice with us.  The change will take effect as of the date the Notice is signed.  We will not be liable for any payment made or action taken before we record the change.

(Id.)

The Annuity defines "you" as the "Owner," meaning "[t]he person(s) or entity(ies) entitled to the ownership rights under this [c]ontract."  (Id. at 19)  The Annuity lists Fabian as the owner.  (Id. at 9)  The "Annuitant" is "[t]he natural person(s) on whose life [a]nnuity [p]ayments are based."  Here, the Annuitant is Fabian.  (Id. at 9, 19)  The "Beneficiary" is "[t]he person(s) or entity(ies) you name to receive a death benefit payable under this [c]ontract upon the death of the Owner . . . , or in certain[] circumstances, the Annuitant."  (Id. at 19)  Any reference to "we," "us," or "our" means MetLife.  (Id. at 7)  The "Issue Date" is April 9, 2009.  (Id. at 9, 19)  The Annuity defines "Notice" as "[a]ny form of communication providing information we need, either in [a] signed writing or another manner that we approve in advance.  All Notices to us must be sent to our Annuity Service Office and received in good order."  (Id. at 19)  The Annuity lists a mailing address for the Annuity Service Office.  (Id. at 11)

**B.    Claims for the Annuity's Death Benefit**

On April 29, 2013, Wolsey died.  (Cmplt. (Dkt. No. 1) ¶ 9)  On October 11, 2020, Fabian died.  (Id., Ex. C (Dkt. No. 1-3) at 1)  Upon Fabian's death, the Annuity death benefits

3

became due. (Cmplt. (Dkt. No. 1) ¶ 11) According to Brighthouse, because Wolsey predeceased

Fabian, the Annuity's beneficiary of record at the time of Fabian's death was Wolf. (Id. ¶ 12;

see also Mosack Ans., Ex. M (Dkt. No. 13-13) at 2)

On December 31, 2020, Mosack asserted a claim to the death benefit on behalf of

Fabian's estate, and requested that payment be made to an account at Merrill Lynch, Pierce,

Fenner & Smith ("Merrill Lynch") owned by the estate. (Cmplt. (Dkt. No. 1) ¶ 13; id., Ex. D

(Dkt. No. 1-4) at 12) On January 8, 2021, Brighthouse informed Mosack that it could not

process the estate's claim to the death benefit because the estate was not the Annuity's

beneficiary of record. (Cmplt. (Dkt. No. 1) ¶ 14) On July 9, 2021, Wolf asserted a claim to the

death benefit. (Id. ¶ 17)

### 1.   Mosack's Claim to the Annuity's Death Benefit

According to Mosack, Esther Herman serviced Fabian's account at Merrill Lynch,

and Herman executed the Annuity application on Fabian's behalf on March 17, 2009. (Mosack

Ans. (Dkt. No. 13) ¶ 10) Upon the issuance of the Annuity, and in connection with her Merrill

Lynch account, Fabian received monthly statements from Merrill Lynch reflecting the value of

the Annuity. (Id. ¶ 11) At some point between the issuance of the Annuity on April 9, 2009 and

Wolsey's death on April 29, 2013, Barbara G. Roberts replaced Herman as the Merrill Lynch

employee servicing Fabian's account. (Id. ¶ 12)

After Roberts began servicing Fabian's Merrill Lynch account, Fabian received

quarterly statements from Brighthouse that listed Merrill Lynch and Roberts as Fabian's

"Advisor[s]" for purposes of another annuity that Fabian owned. (Id. ¶ 13; id., Ex. A (Dkt. No.

13-1) at 1) These statements "contain[] instructions for changing or updating the information

relating to the owner, annuitant, 'and any beneficiaries,'" and explain that "changes to

information regarding beneficiaries can be facilitated directly with Brighthouse, 'or by

4

contacting [Fabian's] Representative.'"  (Mosack Ans. (Dkt. No. 13) ¶ 14 (second alteration in original) (quoting id., Ex. A (Dkt. No. 13-1)))

On November 9, 2017, Fabian signed a Power of Attorney and Healthcare Proxy naming Judith Gura as her attorney-in-fact and healthcare proxy.  (Mosack Ans. (Dkt. No. 13) ¶ 15; id., Ex. B (Dkt. No. 13-2) at 1, 4)  On August 30, 2018, Gura informed Roberts that Fabian would execute paperwork to convert her Merrill Lynch account to a "Transfer On Death" account.  (Mosack Ans. (Dkt. No. 13) ¶¶ 16-17)  Gura also stated that "Fabian will 'designate a new beneficiary for the account that still lists Tom Wolsey.'"  (Id. ¶ 17 (quoting id., Ex. D (Dkt. No. 13-4)))  On September 18, 2018, "Merrill Lynch sent Fabian a written confirmation that, at Fabian's request, the beneficiary of her Merrill Lynch [Individual Retirement Account] had been changed to Gura."  (Id. ¶ 18)  Fabian's Individual Retirement Account is distinct from the Merrill Lynch account containing the Annuity.  (See id. ¶¶ 11, 17)

On September 26, 2018, "Merrill Lynch sent Fabian a written confirmation that, at Fabian's request, [her] Merrill Lynch [a]ccount . . . had been changed to a [Transfer On Death] [a]ccount and that Gura was named as the account's beneficiary."  (Id. ¶ 19)  "Roberts did not inform Fabian or Gura that additional paperwork was required to change the beneficiary of the Annuity."  (Id. ¶ 20)

Following Gura's death on April 12, 2020, Fabian named Mosack as her attorney-in-fact and healthcare proxy, pursuant to a Power of Attorney and Healthcare Proxy that Fabian signed on April 16, 2020.  (Id. ¶¶ 21-22; id., Ex. G (Dkt. No. 13-7) at 1, 4)

On June 30, 2020, "Mosack emailed Roberts regarding the paperwork Mosack [had] submitted to Merrill Lynch updating the beneficiary information on all of Fabian's Merrill Lynch accounts and assets to name [t]he Estate of Joyce Fabian as beneficiary after the passing

of Gura." (Mosack Ans. (Dkt. No. 13) ¶ 23)  On July 1, 2020, "Mosack emailed Roberts to confirm that Gura was the beneficiary of all of Fabian's accounts and assets at Merrill Lynch prior to her death," and Roberts responded that "'[Gura] was beneficiary on all.'" (Id. ¶ 24 (alteration in original) (quoting id., Ex. H (Dkt. No. 13-8) at 1))

Mosack contends that – at about this time – "the beneficiary of Fabian's Merrill Lynch [Individual Retirement Account] was changed, at the direction of Fabian, to designate Mosack as the sole beneficiary." (Id. ¶ 25)  As noted above, Fabian's Merrill Lynch Individual Retirement Account is distinct from the Merrill Lynch Transfer On Death account that held the Annuity. (See id. ¶¶ 11, 17)

On November 30, 2020 – after Fabian's October 11, 2020 death – Mosack was named as "the Preliminary Executor of [t]he Estate of Joyce Fabian." (Id. ¶¶ 26-27)  Mosack then contacted Roberts and "direct[ed] Merrill Lynch to create estate accounts for . . . Fabian's assets at Merrill Lynch." (Id. ¶ 28)  In response, "Roberts sent Mosack paperwork to complete the creation of Merrill Lynch estate accounts," including an Annuity Beneficiary Claim form for the Annuity on which Roberts had listed the Estate of Joyce Fabian as the beneficiary and Mosack as the executor. (Id. ¶ 29; see also id., Ex. K (Dkt. No. 13-11) at 3)  In a December 31, 2020 email to Mosack, Roberts states that the Annuity's beneficiary is the Estate of Joyce Fabian. (Mosack Ans. (Dkt. No. 13) ¶ 30; see also id., Ex. L (Dkt. No. 13-12))

On December 31, 2020, Mosack completed the Annuity Beneficiary Claim form and submitted it to Brighthouse. (Id. ¶ 31)  In a January 8, 2021 letter, Brighthouse informed Mosack that the Estate of Joyce Fabian is not the beneficiary of record for the Annuity. (Id. ¶ 32)  And in a July 13, 2021 letter, Brighthouse's counsel informed Mosack's counsel that "at no time from the issuance of the Annuity on April 9, 2009, until the death of . . . Fabian on October

11, 2020, did Brighthouse receive a change of beneficiary form from Merrill Lynch."  (Id. ¶ 33;

see also id., Ex. M (Dkt. No. 13-13) at 1-2)

> According to Mosack,

> Fabian, personally and through her attorneys-in-fact, made it clear to Merrill
> Lynch on at least three occasions – after the death of Thomas Wolsey, during the
> creation of the [Transfer On Death] account and after the death of Gura – that the
> beneficiary of the Annuity, like all of the other assets Fabian held at Merrill
> Lynch, should be changed to remove Thomas Wolsey as beneficiary and Natasha
> Wolf as contingent beneficiary, replacing them first with Gura and later, upon the
> death of Gura, [to] Mosack as sole beneficiary.

(Mosack Ans. (Dkt. No. 13) ¶ 34)  Mosack further asserts that "Fabian's directions were clear[,]

and if not for the inaction of Merrill Lynch[,] . . . the Estate of Joyce Fabian would have been

named beneficiary of the Annuity at the time of Fabian's passing."  (Id. ¶ 35)  Merrill Lynch

never informed Mosack that additional paperwork had to be submitted to Brighthouse in order to

effectuate a change in the Annuity's beneficiary, however, and Mosack did not know that the

beneficiary of the Annuity had not been changed to the Estate of Joyce Fabian until she received

Brighthouse's January 8, 2021 letter.  (Id. ¶¶ 36-37)

## 2. Wolf's Claim to the Annuity's Death Benefit

According to Wolf, "any change of the . . . Annuity's beneficiaries was required

to be in a writing signed by . . . Fabian and agreed to by Brighthouse," and such a change in

beneficiary never occurred.  (Wolf Ans. (Dkt. No. 16) at 5, ¶¶ 8-9)  According to Wolf, when

Wolsey died on April 29, 2013, Wolf was "the sole contingent beneficiary of the . . . Annuity

[and was] unequivocally entitled to payment of the [d]eath [b]enefit under New York law."  (Id.

at 5, ¶ 10)  Because "Fabian never executed a Brighthouse change in beneficiary form to name

either Defendant Mosack or the Estate [of] Joyce Fabian as a beneficiary of the . . . Annuity,"

"Defendant Mosack and the Estate of Joyce Fabian have no valid claim to payment of the [d]eath

[b]enefit of the . . . Annuity."  (Id. at 5, ¶¶ 11, 13)

### DISCUSSION

I.   **RULE 12(c) STANDARD**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005)).  Accordingly, to survive a motion for judgment on the pleadings, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"'Judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."'" Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C., 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021) (quoting VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A., 594 F. Supp. 2d 334, 339 (S.D.N.Y. 2008), aff'd, 355 F. App'x 507 (2d Cir. 2009); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988)).  "Thus, a court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." Lively, 6 F.4th at 302.  A motion for judgment on the pleadings is to be granted "only where, on the facts admitted by the non-moving party, the moving party is clearly entitled to judgment." Transamerica Fin. Life Ins. Co. v. Session, No. 10 Civ. 1328 (HB), 2010 WL 4273294, at *2 (S.D.N.Y. Oct. 28, 2010) (citing Sellers, 842 F.2d at 642 (2d Cir. 1988)).

"[O]n a motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the

pleading, and (4) matters of which the court may take judicial notice." <u>Lively</u>, 6 F.4th at 306

(emphasis omitted).  "Where other extrinsic materials are submitted to the Court for

consideration in connection with a 12(c) motion, the additional materials must either be

excluded, or the motion must be converted to one for summary judgment under Fed. R. Civ. P.

56 after affording the parties the opportunity to conduct appropriate discovery and submit

additional supporting materials." <u>Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC</u>,

No. 11 Civ. 3327 (ER), 2013 WL 417406, at *6 (S.D.N.Y. Feb. 4, 2013) (citing Fed. R. Civ. P.

12(d); <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000)).

## II.   ANALYSIS

Wolf contends that she "is entitled to a judgment directing that the [A]nnuity be

paid to her and dismissing the competing claim to the [A]nnuity asserted by Defendant Mosack

because Defendant Mosack admits that no change of beneficiary form was ever executed, as

required by law." (Wolf Br. (Dkt. No. 27) at 4)

Mosack contends that Fabian, "through the actions taken by two separate

attorneys-in-fact during her life, took affirmative actions to remove Thomas Wolsey as primary

beneficiary and Wolf as contingent beneficiary of the . . . Annuity[,] replacing them first with

Judith Gura as sole beneficiary and later, upon . . . Gura's death, with Mosack as sole

beneficiary." (Mosack Br. (Dkt. No. 34) at 4)  Mosack further contends that "Merrill Lynch's

failure to act as directed by Fabian's agents was wholly outside Fabian's control and

unbeknownst to Fabian, [and] thwarted her attempts to change the beneficiary of the . . .

Annuity." (<u>Id.</u> at 5)  "Because Fabian took all reasonable steps to change the beneficiary of the .

. . Annuity to Mosack, Mosack is entitled to an [o]rder directing that the . . . Annuity be paid to her and dismissing the competing claim made by Wolf." (Id.)[3]

### A.   Law Regarding Beneficiary Designations

#### 1.   Requirements to Change Beneficiary Designations

Under New York Law,[4] "[a] designation of a beneficiary or payee to receive payment upon death of the person making the designation or another must be made in writing and signed by the person making the designation and be[] . . . [a]greed to by the insurance company or the savings bank authorized to conduct the business of life insurance, as the case may be." N.Y. Estates, Powers & Trusts Law ("E.P.T.L.") § 13-3.2(e)(2). Moreover, "the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary." McCarthy v. Aetna Life Ins. Co., 92 N.Y.2d 436, 440 (1998). "An insurance policy's change-of-beneficiary requirements exist not only to protect the insurer from multiple claims, but also to 'serve[] the essential goal of preventing the courts and parties from speculating regarding the wishes of the deceased.'" William Penn Life Ins. Co. of N.Y. v. Viscuso, 569 F. Supp. 2d 355, 365 (S.D.N.Y. 2008) (alteration in original) (quoting McCarthy, 92 N.Y.2d at 442).

---

[3] Wolf and Mosack "request that the Court treat [their] motion[s] as [motions] for summary judgment under Fed. R. Civ. P. . . . 12(d)" "[t]o the extent that undisputed documentary evidence is submitted beyond the pleadings." (Wolf Br. (Dkt. No. 27) at 4; Mosack Br. (Dkt. No. 34) at 4) Because this Court has considered only the pleadings, exhibits to the pleadings, documents incorporated by reference in the pleadings, and matters of which the Court may take judicial notice, see Lively, 6 F.4th at 306, this Court will apply the standards applicable to Rule 12(c) motions.

[4] The Annuity does not contain a choice of law provision, and Mosack and Wolf cite exclusively to New York law. Because "the parties' briefs assume that New York law controls," their "'implied consent [to the application of New York law] . . . is sufficient to establish choice of law.'" Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (omission in original) (quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000)).

"Strict compliance with the rule," however, "is not always required." McCarthy, 92 N.Y.2d at 440.

> Under the doctrine of substantial compliance, exact compliance with the terms of the policy will be excused, and a change of beneficiary given effect, where the insured took "an affirmative act or acts to accomplish a change of beneficiary, and these affirmative act or acts . . . accomplished all that it was in [the insured's] actual power to do to change beneficiaries."

Viscuso, 569 F. Supp. 2d at 365-66 (alteration and omission in original) (quoting Sun Life Assurance Co. of Can. (U.S.) v. Gruber, No. 05 Civ. 10194 (NRB), 2007 WL 4457771, at *18 (S.D.N.Y. Dec. 14, 2007), aff'd sub nom. Sun Life Assurance Co. of Can. v. Gruber, 334 F. App'x 355 (2d Cir. 2009)). "The intent of the insured is key to the inquiry, but proof of intent alone is not enough:  the insured's intent must have been thwarted by circumstances beyond his or her control." Id. at 366 (citing Gruber, 2007 WL 4457771, at *18; Schoenholz v. N.Y. Life Ins. Co., 234 N.Y. 24, 29-30 (1922); Conn. Gen. Life Ins. Co. v. Boni, 48 A.D.2d 621, 621 (1st Dept. 1975)). "The insured must have done 'all that was reasonably possible to do to show his intention' or have made 'every reasonable effort to comply with the policy requirements.'" Id. (quoting McCarthy, 92 N.Y.2d at 440). "[W]here the substantial-compliance doctrine operates equitably to 'make[] an incomplete change of beneficiary effective against the original beneficiary,' courts have set a high bar for the affirmative acts that satisfy the specific-intent threshold and the allowable reasons for making an incomplete change." Sun Life & Health Ins. Co. (U.S.) v. Colavito, 14 F. Supp. 3d 176, 186 (S.D.N.Y. 2014) (alteration in original) (internal citation omitted) (quoting Prudential Ins. Co. of Am. v. Kamrath, 475 F.3d 920, 924 (8th Cir. 2007)).

In Union Central Life Insurance Company v. Berger, for example, a decedent entered into a settlement agreement with his first wife, pursuant to their divorce, which "required [the] [d]ecedent to purchase $2.2 million in life insurance, to name [his first wife] and [his

daughter] as irrevocable beneficiaries, and to maintain this policy until he reached age 62." No.

10 Civ. 8408 (PGG), 2012 WL 4217795, at *1 (S.D.N.Y. Sept. 20, 2012), aff'd, 612 F. App'x 47

(2d Cir. 2015). "After age 62, [the] [d]ecedent was to maintain $1 million of life insurance, with

[his first wife] and [his daughter] as irrevocable beneficiaries, until he reached age 75." Id. In

the settlement agreement, the decedent's first wife waived all other claims to the decedent's

property. Id. at *2.

"[A]s part of his obligation to obtain $2.2 million in life insurance, [the]

[d]ecedent [obtained] a $700,000 life insurance policy . . . , designating [his first wife] as the

primary beneficiary of the policy." Id. "In satisfaction of his remaining insurance obligations

under the [s]ettlement [a]greement, [the] [d]ecedent named [his first wife] and [his daughter] as

irrevocable beneficiaries under two other life insurance policies:  a $1 million . . . policy [with

the same insurer] and a $500,000 policy issued by [another insurance company]." Id.

Because the designation of the decedent's first wife in the $700,000 policy as

primary beneficiary "did not fully comply with the [s]ettlement [a]greement," the decedent

"executed a 'Policyowner's Change and Service Request,' updating the beneficiary designations

of the [p]olicy to name [his first wife] as the irrevocable primary beneficiary and [his daughter]

as the irrevocable contingent beneficiary." Id. The insurer then sent a "written notice [to the

decedent] confirming that [his first wife] and [his daughter] were irrevocable primary and

contingent beneficiaries under the [$700,000] [p]olicy." Id.

The decedent remarried. Id. After reaching age 62, the decedent completed a

Policy Owner's Change and Service Request form, which "substitute[ed] [his second wife] as the

beneficiary under the [$700,000] [p]olicy, and his insurance broker . . . submitted the form to

[the insurance company]." Id. The insurer's customer service representative reviewed the

decedent's submission and "asked [the] [d]ecedent to sign page 2 of the form and confirm the
spelling of [his second wife]'s name. [The insurer] did not inform [the] [d]ecedent of any other
deficiencies in the change form." Id. The decedent "added the requested signature and [his
second wife] re-submitted the change request to [the insurance company]." Id. The decedent
"confirmed the spelling of [his second wife]'s name and again signed and re-submitted the
change request." Id. "Neither [the] [d]ecedent nor [the insurer] informed [the decedent's first
wife] or [his daughter] . . . that [the] [d]ecedent had executed the change request, [however], and
neither [the decedent's first wife] nor [his daughter] was asked to, or did, consent to the
beneficiary change." Id. at *4. The insurance company nonetheless "accepted the [d]ecedent's
change request and confirmed that fact in writing to [the] [d]ecedent." Id. "After confirming the
change, [the insurance company] never informed [the] [d]ecedent that there was any deficiency
with respect to the change, or that it was otherwise ineffective or unenforceable." Id.

The decedent died at age 65. Id. The decedent's first wife "submitted her claim
to [the insurance company] concerning the [d]ecedent's $1 million [insurance] policy," and the
insurance company "paid that $1 million claim." Id. With respect to the $700,000 policy, the
decedent's second wife sought payment, but the insurer stated that it would not pay the claim,
"because the [p]olicy was subject to an irrevocable beneficiary designation." Id. And when the
insurer asked the decedent's first wife and daughter to consent to the change in beneficiary
designation for the $700,000 policy, they refused. Id.

The insurer then filed an interpleader action to resolve who would receive the
proceeds of the $700,000 policy. This Court noted that,

>after reaching age 62, and in recognition of the fact that he was no longer required
>to maintain more than $1 million of insurance naming [his first wife] and [his
>daughter] as beneficiaries, [the] [d]ecedent submitted the Policy Owner's Change
>and Service Request three times to [the insurer that had issued the $700,000

13

> policy] – directing on each occasion that [his second wife] be substituted as
> beneficiary in place of [his first wife] and [his daughter] – and twice received
> written confirmation that the requested change had been made.

Id. (emphasis in original) (citations omitted).  This Court found that,

> [g]iven this record, it is crystal clear that [the] [d]ecedent intended to substitute
> [the second wife] as the beneficiary under the [p]olicy, and that he repeatedly took
> affirmative steps to accomplish this change.  After [the insurer] twice confirmed
> that the beneficiary change had been made, it was reasonable for [the] [d]ecedent
> to have believed that the beneficiary change had in fact been made.

Id.  This Court went on to conclude that the "[d]ecedent's actions constitute[d] 'substantial

compliance' with the terms of the [$700,000] [p]olicy governing the change of beneficiary."  Id.

"By contrast, courts will not find substantial compliance when the insured had an

unimpeded opportunity to comply with the policy's procedures but failed to do so."  Colavito, 14

F. Supp. 3d at 187.  In Gruber, for example, the insurance policy provided that

> "[the insured] can change [his] [b]eneficiary at any time, unless [he] ha[s] stated
> [his] choice of [b]eneficiary is irrevocable or [he] ha[s] assigned [his] interest in
> [his] [l]ife [i]nsurance to another person.  Any request for change of [the]
> [b]eneficiary must be in written form and will take effect on the date [the insured]
> sign[s] and file[s] the change with [his] [e]mployer. . . .  The consent of [the
> insured's] [b]eneficiary is not required to change any [b]eneficiary unless the
> [b]eneficiary designation was irrevocable."

2007 WL 4457771, at *5 (omission in original).  The insured "executed at least three separate

Designation of Beneficiary forms . . . directing who was to receive the proceeds of the

[insurance] policy."  Id. at *1.  While in the hospital and just prior to his death, the insured

signed the third designation form, which was "completely blank," and had "no designation of

beneficiary nor date."  Id. at *3.  The court found that "[the insured's] signature on the blank

form did not count as a change of beneficiary, and the [third] designation [form] is not an

effective change of beneficiary under the terms of the [insurance] policy."  Id. at *17.  The court

further found that, "[o]n these facts, [the insured] did not undertake enough of an affirmative act

to satisfy the rule of substantial compliance[, and] did not come close to doing 'all that was

14

reasonably possible' to change his beneficiary." Id. at *18.  "Had he wanted to change [the]

beneficiary, all that [the insured] would have had to do would have been to write in [the new

beneficiary]'s name on the [designation of beneficiary] form." Id.

> ### 2.   Authority of Attorney-in-Fact to Change Beneficiary Designation

"A power of attorney authorizes another party – an 'agent' – to act in the stead of

another – the 'principal' – as his or her attorney in fact." Antoine v. Am. Sec. Ins. Co., No. 18

Civ. 05850 (KAM) (VMS), 2020 WL 606620, at *7 (E.D.N.Y. Feb 7, 2020) (citing Heine v.

Colton, Hartnick, Yamin & Sheresky, 786 F. Supp. 360, 374 (S.D.N.Y. 1992)).

> An attorney in fact is "an alter ego of the principal and is authorized to act with
> respect to any and all matters on behalf of the principal," except for "acts which,
> by their nature, by public policy, or by contract require personal performance."
> Accordingly, an agent can perform all acts, absent any express limitations, "as
> fully as the principal" can.

Id. (internal citation omitted) (quoting Heine, 786 F. Supp. at 374; Romero v. Sjoberg, 5 N.Y.2d

518, 523 (1959)).

Under New York law, a "principal may . . . authorize [an] agent to[] . . . chang[e]

the beneficiary or beneficiaries of any . . . annuity contract for the benefit of the principal." N.Y.

Gen. Oblig. Law § 5-1514(3)(c)(5).  "Any agent may not," however, "exercise [this] authority . .

. unless such authority is expressly granted in a statutory gifts rider to a statutory short form

power of attorney." Id. § 5-1514(4)(a); see also id. § 5-1514(1) ("If [a] principal intends to

authorize [an] agent to make gifts . . . , the principal must expressly grant such authority . . . in a

statutory gifts rider to a statutory short form power of attorney.").  "'[A]bsent a specific

provision in the power of attorney document authorizing gifts, an attorney-in-fact, in exercising

his or her fiduciary responsibilities to the principal, may not make a gift to himself or a third

party of the money or property which is the subject of the agency relationship.'" Matter of

Masterson, 46 A.D.3d 1091, 1092 (3d Dept. 2007) (quoting Marszal v. Anderson, 9 A.D.3d 711,

712-13 (3d Dept. 2004)). "'Such a gift carries with it a presumption of impropriety and self-dealing, a presumption which can be overcome only with the clearest showing of intent on the part of the principal to make the gift.'" Id. (quoting Semmler v. Naples, 166 A.D.2d 751, 752 (3d Dept. 1990)). "[W]here an attorney-in-fact seeks to enter into a transaction that the governing power of attorney prohibits, the transaction is invalid." Viscuso, 569 F. Supp. 2d at 364 (citing In re Culbreth, 48 A.D.3d 564, 564 (2d Dept. 2008); Salonen v. Salonen, 8 A.D.3d 255, 256 (2d Dept. 2004)).

**B.    Whether Fabian Changed the Annuity's Beneficiary Designation**

Mosack contends that "[f]rom the time the . . . Annuity was originally issued naming Thomas Wolsey as primary beneficiary and Wolf as contingent beneficiary, Fabian via her agents, on two separate occasions, took affirmative and reasonable steps to change the beneficiary of the . . . Annuity." (Mosack Br. (Dkt. No. 34) at 8)  Mosack further argues that she, "like Gura before her, took all reasonable action necessary to change the beneficiary of the . . . Annuity," and that "Merrill Lynch, by not facilitating the changes with Brighthouse and/or not informing their client that additional steps were necessary to change the beneficiary, thwarted Gura and Mosack's[] efforts to change the beneficiary of the . . . Annuity." (Id. at 8-9)  Mosack contends that "[t]hese facts present an unequivocal intent by Fabian to remove Thomas Wolsey as primary beneficiary and Natasha Wolf as contingent beneficiary, replacing them first with Gura and later, upon the death of Gura, with Mosack as sole beneficiary." (Id. at 9)  In sum, Mosack argues that Fabian made all reasonable efforts to change the beneficiary of the Annuity, and that Fabian's actions constitute substantial compliance with the Annuity's provisions regarding the change of a beneficiary. (Id. at 6-11)

Wolf argues that "[i]t is undisputed that the only beneficiary designation form signed by Fabian and delivered to Brighthouse (or its predecessor) was in 2009[,] wherein she

designated her husband Thomas Wolsey as the primary beneficiary and Defendant Wolf as the contingent beneficiary." (Wolf Br. (Dkt. No. 27) at 11)  Wolf further argues that New York law requires "a written designation of a beneficiary, signed by the person making the designation and accepted by the insurance company," and that "Wolf was designated in writing as the contingent beneficiary (the primary beneficiary, Thomas Wolsey, predeceased Fabian), Fabian died, and Wolf is now the sole beneficiary under the written instrument as it has existed from its inception date." (Id. at 10-11 (citing N.Y. E.P.T.L. § 13-3.2(e)))

In response to Mosack's arguments, Wolf asserts that Mosack has not "demonstrate[d] Fabian's unequivocal intent to change beneficiaries," nor shown "affirmative acts by the policy holder to make the change and to make every effort to comply with policy terms." (Wolf Reply (Dkt. No. 28) at 5-6 (citing McCarthy, 92 N.Y.2d. at 440-41))  Wolf further contends that, to the extent that Mosack argues "that Fabian's agents, Mosack and Gura, acting under their [powers of attorney], attempted to change the beneficiaries of the . . . Annuity or the Merrill Lynch bank account that purportedly held the . . . Annuity, . . . such actions were unlawful and void." (Id. at 13)  According to Wolf, "[a]s a matter of law[,] neither [Mosack nor Gura] could effect a change in beneficiary of the . . . Annuity, especially not to themselves." (Id. at 12)[5]

---

[5] It is not entirely clear from Mosack's briefing whether she contends that the Annuity's death benefit should be paid to her or to Fabian's estate.  In her brief, Mosack argues both that the Annuity's death benefit should "be paid to her" (see, e.g., Mosack Br. (Dkt. No. 34) at 5, 11), and that the Annuity's death benefit should "be paid to her[] as Preliminary Executor of [t]he Estate of Joyce Fabian." (See, e.g., id. at 6)  In her Answer, Mosack states that she seeks an order awarding the Annuity's death benefit "to Mosack as the Executor of [t]he Estate of Joyce Fabian." (Mosack Ans. (Dkt. No. 13) at 6)  Accordingly, this Court construes Mosack's briefing as seeking a payment to Fabian's estate and not to Mosack in her individual capacity.

As an initial matter, it is undisputed that the requirements for changing the Annuity's beneficiary designation are not met under either the New York Estates, Powers, and Trusts Law or the Annuity. Under the Estates, Powers, and Trusts Law, a change in the Annuity's beneficiary designation requires a signed writing as well as the agreement of the insurer. <u>See</u> N.Y. E.P.T.L. § 13-3.2(e)(2). As to the Annuity, it requires that the owner – Fabian – file a "Notice" with MetLife – or later Brighthouse – which the Annuity defines as "[a]ny form of communication providing information [the insurer] need[s], either in [a] signed writing or [in] another manner that [is] approve[d] in advance. All Notices to [the insurer] must [have] be[en] sent to [the insurer's] Annuity Service Office and received in good order." (Annuity (Dkt. No. 1-1) at 19-20)

Here, Mosack does not claim that Fabian changed the beneficiary designation through a signed writing, nor does she contend that Fabian submitted any such signed writing to MetLife or Brighthouse. (<u>See</u> Mosack Ans. (Dkt. No. 13) ¶¶ 33-37) Mosack likewise does not assert that MetLife or Brighthouse ever agreed to any change in the beneficiary designation. (<u>See</u> Cmplt. (Dkt. No. 1) ¶ 14; Mosack Ans. (Dkt. No. 13) ¶ 33) Accordingly, Fabian did not comply with the requirements to change the Annuity's beneficiary designation, under either the New York Estates, Powers, and Trusts Law or under the Annuity.

Fabian's actions likewise do not constitute "substantial compliance" with the requirements for changing the beneficiary designation. "The intent of the insured is key to the inquiry [regarding substantial compliance]," <u>Viscuso</u>, 569 F. Supp. 2d at 366, and here Mosack's conclusory allegations concerning Fabian's intent to change the Annuity's beneficiary designation are insufficient.

According to Mosack, "Fabian first intended the [d]eath [b]enefit to go to her

close friend, Gura, and later, upon the passing of Gura, to her estate." (Mosack Ans. (Dkt. No.

13) ¶ 38)  Mosack further alleges that

> Fabian, personally and through her attorneys-in-fact, made it clear to Merrill
> Lynch on at least three occasions – after the death of Thomas Wolsey, during the
> creation of the [Transfer On Death] account and after the death of Gura – that the
> beneficiary of the Annuity, like all of the other assets Fabian held at Merrill
> Lynch, should be changed to remove Thomas Wolsey as beneficiary and Natasha
> Wolf as contingent beneficiary, replacing them first with Gura and later, upon the
> death of Gura, [to] Mosack as sole beneficiary.

(Id. ¶ 34)  As to how Fabian "made it clear" that she intended to change the Annuity's

beneficiary designation, Mosack merely asserts that "Gura inform[ed] Roberts that Fabian will

execute the [Transfer On Death] account paperwork for [Fabian's] Merrill Lynch [a]ccount . . . ,

stating that Fabian will 'designate a new beneficiary for the account that still lists Tom Wolsey.'"

(Id. ¶ 17 (quoting id., Ex. D (Dkt. No. 13-4)))  And Mosack's allegations concerning the actions

she took when she became Fabian's attorney-in-fact following Gura's death do not shed light on

what Fabian did or intended to do.  (See id. ¶¶ 23-24)

Even assuming arguendo that Mosack sufficiently alleges that Fabian intended to

change the Annuity's beneficiary designation, "proof of intent alone is not enough." Viscuso,

569 F. Supp. 2d at 366.  Fabian also "must have done 'all that was reasonably possible to do to

show h[er] intention [to change the beneficiary designation]' or have made 'every reasonable

effort to comply with the policy requirements.'" Id. (quoting McCarthy, 92 N.Y.2d at 440).

This she did not do.

The Annuity issued to Fabian on April 9, 2009, provides instructions on how to

change the beneficiary designation.  (See Annuity (Dkt. No. 1-1) at 9, 20)  As discussed above,

Mosack does not even argue that Fabian performed the required actions, or that Fabian took any

action or made any efforts to comply with the Annuity's requirements to change the beneficiary

designation.

Although Mosack alleges that she and Gura – as Fabian's "attorneys-in-fact" –

took certain actions on Fabian's behalf to change the beneficiary designation,[6] neither Gura nor

Mosack was authorized to change the Annuity's beneficiary.

As discussed above, Fabian signed two Powers of Attorney and Healthcare

Proxies – one on November 9, 2017, naming Gura as her attorney-in-fact and healthcare proxy,

and another on April 16, 2020 – after Gura's death – naming Mosack as her attorney-in-fact and

healthcare proxy.  (Mosack Ans. (Dkt. No. 13) ¶¶ 15, 22; id., Ex. B (Dkt. No. 13-2); id., Ex. G

(Dkt. No. 13-7))  Fabian did not initial the optional statutory gifts rider section in either power of

---

[6]  For example, Mosack alleges that Gura told Merrill Lynch's Roberts "that Fabian will
'designate a new beneficiary for the account that still lists Tom Wolsey'" (Mosack Ans. (Dkt.
No. 13) ¶ 17 (quoting id., Ex. D (Dkt. No. 13-4)), and that Mosack "emailed Roberts [after
Gura's death] regarding the paperwork Mosack submitted to Merrill Lynch updating the
beneficiary information on all of Fabian's Merrill Lynch accounts and assets to name [t]he Estate
of Joyce Fabian as beneficiary."  (Id. ¶¶ 23-24 (citing id., Ex. H (Dkt. No. 13-8))  Mosack does
not allege, however, that either she or Gura ever directed Roberts or anyone else at Merrill Lynch
to effect the change to the Annuity's beneficiary designation.  Nor did MetLife or Brighthouse
ever provide any confirmation that the beneficiary of the Annuity had been changed.  Indeed, it
was only after Fabian's death that Mosack sought confirmation from Roberts – and not from
MetLife or Brighthouse – that the Annuity's beneficiary had been changed to Fabian's estate.
(Mosack Ans. (Dkt. No. 13) ¶ 30; see also id., Ex. L (Dkt. No. 13-12) at 2)  Unlike in Berger,
where the insurer had "twice confirmed that the beneficiary change had been made," and the
decedent did "'all that was reasonably possible to show his intention' that he wanted to change
the beneficiary," 2012 WL 4217795, at *9, here no effort was made with the insurer either to
effect the change in beneficiary or seek confirmation that the change had been made.  Because
Fabian "had an unimpeded opportunity to comply with the [Annuity's] procedures but failed to
do so," Colavito, 14 F. Supp. 3d at 187, the substantial compliance doctrine does not apply.

Finally, to the extent that Mosack relies on certain quarterly statements that Brighthouse
provided (see Mosack Br. (Dkt. No. 34) at 7 (citing Mosack Ans., Ex. A (Dkt. No. 13-1))), those
statements are irrelevant here, because they relate to a different annuity.  The statements cited by
Mosack concern an annuity with contract number 1102257555 (see Mosack Ans., Ex. A (Dkt.
No. 13-1) at 1), while the Annuity at issue here bears contract number 1102112297.  (See
Annuity (Dkt. No 1-1) at 9; see also Mosack Ans., Ex. M (Dkt. No. 13-13) at 1)

attorney document, however.  (Mosack Ans., Ex. B (Dkt. No. 13-2) at 3; Mosack Ans., Ex. G

(Dkt. No. 13-7) at 3)  As discussed above, an "agent may not" "chang[e] the beneficiary or

beneficiaries of any annuity contract" "unless such authority is expressly granted in a statutory

gifts rider."  N.Y. Gen. Oblig. Law §§ 5-1514(4)(a), 5-1514(3)(c)(5); see also id. § 5-1514(1);

Masterson, 46 A.D.3d at 1092.  Because Fabian did not execute the statutory gifts rider, neither

Gura nor Mosack was authorized to change the beneficiary designation in the Annuity.  See id.

Accordingly, any attempt by Gura or Mosack to change the Annuity's beneficiary designation is

invalid.  See Viscuso, 569 F. Supp. 2d at 364.

The Court concludes that the Annuity's beneficiary designation was never

changed.

### C.   **Entitlement to the Annuity's Death Benefit**

The Annuity provides that "[t]he Beneficiary designation in effect on the Issue

Date will remain in effect, unless changed."  (Annuity (Dkt. No. 1-1) at 20)  Because the

beneficiary designation was never changed, the designation in effect on the Annuity's Issue Date

of April 9, 2009 governs.  (Id. at 9, 19)

Under the Annuity,

the death benefit will be paid in equal shares or all to the Beneficiary(ies) as
follows:

1.      to the primary Beneficiary(ies) who survive you (or if the Owner is not a
        natural person, the Annuitant's death); or if there are none, then

2.      to the contingent Beneficiary(ies) who survive you (or if the Owner is not
        a natural person, the Annuitant's death); or if there are none, then

3.      to your estate.

(Id. at 20)  The primary beneficiary in the Annuity was Wolsey, who died on April 29, 2013

(Cmplt. (Dkt. No. 1) ¶¶ 8-9; see also Annuity Application (Dkt. No. 1-2) at 1)  Wolsey

predeceased Fabian, who died on October 11, 2020.  (Cmplt., Ex. C (Dkt. No. 1-3))  Because

Wolsey is the sole primary beneficiary, after his death – under the Annuity – the death benefit

passes to the contingent beneficiary, which is Wolf.  (See Cmplt. (Dkt. No. 1) ¶ 8; see also

Annuity Application (Dkt. No. 1-2) at 1)  Accordingly, at the time of Fabian's death, Wolf was

the Annuity's beneficiary, and she is entitled to the Annuity's death benefit.

## CONCLUSION

For the reasons stated above, Defendant Mosack's motion for judgment on the

pleadings is denied, and Defendant Wolf's motion for judgment on the pleadings is granted.

Within seven days of this Order, Meltzer Lippe, as escrow agent, will distribute the funds in the

escrow account to Defendant Wolf.

The Clerk of Court is directed to terminate the motions (Dkt Nos. 25, 32) and to

close this case.

Dated:  New York, New York
        June 8, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge